Slip Op. 13-128

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, | : : : |
| Plaintiff, | : : Before: Gregory W. Carman, Judge |
| v. | : : Court No. 12-00374 |
| UNITED STATES, | : : |
| Defendant. | : : |

**OPINION & ORDER**

[Commerce's final scope ruling is sustained]

October 9, 2013

*Alan H. Price*, *Derick G. Holt*, *Laura El-Sabaawi*, *Lori E. Scheetz*, *Robert E. DeFrancesco, III*, and *Tessa V. Capeloto*, Wiley Rein, LLP, of Washington DC, for Plaintiff.

*Tara K. Hogan*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades*, *Jr.*, Assistant Director. Of counsel on the brief was *Joanna V. Theiss*, Office of Import Administration, U.S. Department of Commerce, of Washington, DC.

**Carman, Judge**: This matter comes before the Court following the U.S. Department of Commerce's ("Commerce" or "Defendant") determination in *Antidumping (AD) and Countervailing Duty (CVD) Orders: Aluminum Extrusions from the People's Republic of China (PRC): Final Scope Ruling on Side Mount Valve Controls* (Oct. 26, 2012) ("*Final Scope*

*Ruling*"), A.R. 8.[1] Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC" or "Plaintiff") challenges Commerce's determination that importer Innovative Controls, Inc.'s ("Innovative") merchandise "side mount valve controls" ("SMVC") meets the exclusion for "finished goods kits" and accordingly is not subject to the antidumping and countervailing duty orders covering *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (May 26, 2011) and *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,652 (May 26, 2011) (collectively, "*Orders*"). Without reaching the merits of Commerce's scope determination, the Court denies Plaintiff's motion on the agency record because the doctrine of exhaustion of administrative remedies applies in this case.

## BACKGROUND

The *Orders* at issue cover aluminum extrusions from China. *See supra Orders*. On May 11, 2012, Innovative submitted a scope ruling request advocating that its product SMVC kits fell under a scope exclusion for "finished goods kits" in the *Orders*. *See Letter from Innovative Controls Inc. to Sec'y of Commerce, Re: Scope Ruling Request, Aluminum Extrusions from People's Republic of China (A-570-967, C-570-968)* (May 11, 2012) ("*Ruling Request*"), A.R. 1.

Plaintiff asserts that Innovative's SMVC do not fall under the exclusion of "finished goods kits" because they are subassemblies "that will be incorporated into a larger, finished downstream product." Pl.'s Mem. in Supp. of Pl.'s R. 56.2 Mot. for J. on the Agency Record

---

[1] A.R. is the Administrative Record, which is comprised of both the antidumping duty ("AD") case number (A-570-967) and countervailing duty ("CVD") case number (C-570-968). The AD and CVD cases contain identical documents. *See* Def.'s Opp'n at 2 n.1. For ease of reference, the Court will refer to the documents filed under the CVD case number.

("Pl.'s Mot.") at 10.  Plaintiff urges that SMVC are "merely parts for final finished products that are assembled after importation—firetrucks." *Id*. at 11 (internal quotations omitted).  Citing to the *Ruling Request* as support, Plaintiff points out Innovative imports its SMVC under Harmonized Tariff System of the United States ("HTSUS") subheading 8708.29 for "other *parts and accessories* (of the bodies) of the motor vehicles of heading 8701 to 8705." *Id*. (internal quotations and citations omitted) (emphasis in original).  Plaintiff argues "Commerce unlawfully broadened the definition of the exclusion, improperly excluding" SMVC.  *Id.* at 9.

Commerce issued an initiation of scope inquiry and a preliminary scope ruling pursuant to 19 C.F.R. §351.225(f).  *See Mem. to Christian Marsh, Deputy Assistant Sec'y for Antidumping and Countervailing Duty Operations, Re: Initiation and Preliminary Scope Ruling on Side Mount Valve Controls* (Sept. 24, 2012) ("*Preliminary Scope Ruling*"), A.R. 7.  Commerce preliminarily determined that SMVC kits were excluded from the scope of the *Orders* as finished goods kits, "revising the manner in which it determines whether a given product is a 'finished goods' or 'finished goods kit.'" *Preliminary Scope Ruling* at 6-7.  In prior scope rulings, Commerce concluded that "merchandise could not be considered a 'finished goods' or 'finished goods kit' if it was designed to work with other parts to form a larger structure or system." *Id.* at 6.  However, in the instant case, Commerce "identified a concern with this analysis, namely that it may lead to unreasonable results.  An interpretation of 'finished goods kit' which requires all parts to assemble the ultimate downstream product may lead to absurd results, particularly where the ultimate downstream product is, for example, a fire truck." *Id*. at 7.  Given the change in its "finished goods" and "finished goods kit" analysis in the *Preliminary Scope Ruling*, Commerce "invite[d] interested parties to submit comments." *Id*. at 8.  Neither Innovative nor Plaintiff

submitted any comments.  *See Final Scope Ruling* at 2.  Accordingly, Commerce issued its *Final Scope Ruling* without any change from the *Preliminary Scope Ruling*.  *Id*.

As an affirmative defense, Commerce raises the doctrine of exhaustion of administrative remedies as a bar to Plaintiff's claim.  Def.'s Opp'n to Pl.'s Mot. for J. upon the Agency Record ("Def.'s Opp'n") at 5-10.  Commerce alleges that Plaintiff "failed to present any arguments to Commerce concerning its new subassemblies analysis" announced in the *Preliminary Scope Ruling* and that Plaintiff's failure "deprived Commerce of the opportunity to address [Plaintiff's] arguments" in the *Final Scope Ruling*.  *Id*. at 5.  Plaintiff responds that "invoking the exhaustion requirement in this case would be inappropriate."  Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for J. upon the Agency Record ("Pl.'s Reply") at 1.  In support of its position, Plaintiff cited to the Court of the Appeals for the Federal Circuit's ("CAFC") recently issued decision in *Itochu Building Products v. United States*, __ F.3d __, 2013 WL 4405863 (Fed. Cir. 2013) ("*Itochu*").  In *Itochu*, where plaintiff similarly did not file comments after the preliminary determination and defendant raised the exhaustion doctrine as an affirmative defense, the CAFC reversed the lower court's decision that the exhaustion doctrine applied by invoking the futility exception.  2013 WL 4405863.  The CAFC issued *Itochu* on August 19, 2013, after Defendant's opposition brief was filed but before Plaintiff's reply brief was filed.

To give all parties the opportunity to be heard on the impact of the *Itochu* decision, the Court invited parties to provide supplemental briefing on whether that decision applies to the instant case.  *See Letter from the Court to Counsel, Re: Application of Itochu* (Sept. 9, 2013), ECF No. 32.  Plaintiff argues that *Itochu* "is directly applicable here."  Pl.'s Resp. to the Ct.'s Sept. 9, 2013 Letter to the Parties ("Pl.'s Suppl. Br.") at 1.  Plaintiff urges that "invoking the exhaustion requirement in this case would be inappropriate" because "the facts of the instant case

are analogous to those of *Itochu*." *Id.* at 1-2. Plaintiff claims that it "put its full argument on the record" prior to the issuance of the preliminary results so "any additional material or argument" would not "have been significant to Commerce's consideration of the issue in the final results." *Id.* at 2-3. Plaintiff avers that in the *Preliminary Scope Ruling* "Commerce acknowledged and definitively rejected Plaintiff's argument," *id.* at 3, and argues that "no purpose would be served by requiring Plaintiff to have resubmitted its comments in the scope inquiry after Commerce announced its preliminary results," *id.* at 2.

Defendant asserts that the CAFC's "decision in *Itochu* does not affect this case because the 'futility' exception does not apply, and there was no potential for the plaintiff to suffer harm by submitting comments." Def.'s Resp. to the Ct.'s Order ("Def.'s Suppl. Br.") at 3. Defendant points out three key differences between *Itochu* and the instant case: (1) this case involves a new interpretation of scope language while *Itochu* involved a past practice that Commerce was defending in litigation; (2) this case involves a policy decision while *Itochu* involved a perceived statutory mandate; and (3) this case does not involve any potential prejudice by submitting comments while *Itochu* had the threatened delay of 225 days, during which time *Itochu* would have had to continue depositing duties on the merchandise, if comments were submitted. *Id.* at 4-5.

## STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006).[2]  For scope determinations, the Court sustains determinations, findings or conclusions of Commerce unless

---

[2] All references to the United States Code refer to the 2006 edition hereinafter, unless otherwise stated.

they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence "is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion*." Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## DISCUSSION

Defendant raises the affirmative defense that Plaintiff's claim is barred by the doctrine of exhaustion of administrative remedies. The doctrine of exhaustion is not only mandated by statute but also well-settled law. "[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred *against objection made at the time appropriate under its practice." Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (emphasis in original) (*quoting United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). The statutory exhaustion requirement "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (internal quotations and citations omitted). The purpose of this doctrine is to permit the agency to consider an issue prior to judicial review, as the CAFC has explained:

> Requiring exhaustion can protect administrative agency authority and. . . serve judicial efficiency by promoting development of an agency record that is adequate for later court review and by giving an agency a full opportunity to correct errors and thereby narrow or even eliminate disputes needing judicial resolution.

*Itochu*, 2013 WL 4405863 at *4 (internal citations omitted).

As with every general rule, there are exceptions. At issue in this case is an exception for futility, where a party must demonstrate that exhaustion would require it "to go through obviously useless motions in order to preserve [its] rights." *Corus Staal*, 502 F.3d at 1379 (internal quotation omitted). The futility exception, however, "is a narrow one." *Id*. Faced with rare circumstances, the CAFC invoked the futility exception in the *Itochu* case because "Commerce's position, which Commerce was defending in court at the time, was that it had no discretion in the matter because it was constrained by statute to reject Itochu's position." *Itochu*, 2013 WL 4405863 at *7. The *Itochu* court recognized, however, that these were "likely rare" circumstances in which "the demanding abuse-of-discretion standard for reversal of an exhaustion ruling under section 2637(d)" was satisfied. *Id*.

Under this purview, the Court reviews the circumstances of the instant case. First, this case involves a scope ruling challenge while *Itochu* involved a changed circumstance challenge. Distinguishable from *Itochu*, where Commerce had no power of discretion over the effect of a statutory mandate, here, Commerce was clearly exercising its power of discretion on a policy question. Commerce explains that "[i]ndeed, because this was the first time Commerce announced its preliminary revision to its subassembly test, there can be no allegation that Commerce would have been unreceptive to comments or arguments submitted by" Plaintiff. Def.'s Opp'n at 10. The Court agrees. In a scope proceeding, when Commerce announces a new interpretation or policy in its preliminary determination and invites interested parties to

comment, the appropriate time for parties to object to Commerce's new analysis is after publication of the preliminary determination and before issuance of the final determination. Further, the possibility of prejudice and risk of harm—the potential to pay 225 more days of duty deposit if Commerce decided to delay the issuance of its final determination to review parties' comments—cited in *Itochu* is not present here.

Therefore, the instant case does not present the same rare circumstances found in *Itochu*. Given that a new discretionary policy regarding an interpretation of a scope exclusion was announced in the preliminary determination, that Commerce requested comments from all interested parties regarding its new interpretation, that the parties chose not to file comments, and that there was no possibility of prejudice caused by filing comments, the Court holds that the futility exception of the exhaustion doctrine does not apply under these circumstances. Plaintiff is therefore barred from raising issues before the Court that it neglected to raise appropriately during the administrative proceeding.

## CONCLUSION

As a result of the considerations detailed above, the Court holds that the doctrine of exhaustion of administrative applies to this case, barring Plaintiff's claims. Consequently, it is hereby

ORDERED that Defendant's *Final Scope Ruling* is sustained; and it is further

ORDERED that Plaintiff's motion for judgment on the agency record is denied; and it is further

ORDERED that Plaintiff's motion for oral argument (ECF No. 33) is denied.

Judgment to enter accordingly.

                                                        /s/ Gregory W. Carman
                                                        Gregory W. Carman, Judge

Dated: October 9, 2013
        New York, New York